# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**KELLY COOK, as Mother and**
**Next Friend of CHRISTIAN COOK,**

     **Plaintiff**

**v.**                          **No. 2:16-CV-00597 JCH/CG**

**BOARD OF COUNTY COMMISSIONERS FOR**
**THE COUNTY OF CURRY, TORI SANDOVAL,**
**JOAN MARTIN, SUE MARTIN, CORRECTIONAL**
**HEALTHCARE COMPAINES, INC., and CORRECT CARE**
**SOLUTIONS, LLC,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions: (i) Plaintiff Kelly Cook's Motion to Amend the Complaint (ECF No. 25); and (ii) the Rule 12(b) Motion to Dismiss and for Qualified Immunity (ECF No. 15), filed by Defendants Board of County Commissioners for the County of Curry (the "Board"), Tori Sandoval, and Sandra Martin (collectively, hereinafter the "County Defendants").[1] The Court, having considered the motions, briefs, pleadings, and relevant law, concludes that Plaintiff's motion to amend will be granted, and the County Defendants' motion to dismiss and for qualified immunity will be denied.

## I.     FACTUAL BACKGROUND[2]

Christian Cook had a history of mental illness, developmental disorders, and behavioral issues, including known diagnoses for ADHD, autism spectrum disorder, anxiety, borderline

---

[1] Plaintiff moved to amend her complaint to correctly name Defendant Sandra Martin, rather than Sue Martin. Defendant Sandra Martin subsequently provided notice that she joins in the Rule 12(b) Motion to Dismiss (ECF No. 15) in lieu of filing an Answer. *See* Notice, ECF No. 53.

[2] The factual allegations in the Amended Complaint, ECF No. 3, and in the Proposed Second Amended Complaint, ECF No. 25, are largely the same. Because this Court will grant the motion to amend the complaint and the new complaint will become the operative document in the case, the Court will cite to the Proposed Second Amended Complaint when setting forth the factual background.

intellectual functioning, schizoid features, nocturnal enuresis, OCD features, and febrile seizures. Proposed Second Am. Compl. ¶¶ 14, 17, ECF No. 25-1. On June 21, 2013, when he was 15 years old, he was arrested and booked into the Curry County Juvenile Detention Center ("CCJDC"). *Id.* ¶¶ 5, 15-16. At the time, Defendant Tori Sandoval was the CCJDC administrator; Defendant Sandra Martin was a high-ranking guard with supervisory authority at CCJDC; and Defendant Board employed the individual defendants. *Id.* ¶¶ 4-7.[3] Defendants Sandoval and Sandra Martin had day-to-day contact with Christian and were fully aware of the conditions in which he was housed. *Id.* ¶ 200. The CCJDC facility has a design capacity of 16 juveniles and the average population during Christian's detention was only 11 juveniles. *Id.* ¶¶ 201-02.

At the time of his booking, a nurse conducted a medical screening of Christian and noted his diagnosis of ADHD, he appeared anxious, and had a rash, yet he was not treated for either condition. *Id.* ¶¶ 18-19. The nurse recommended Christian be housed in general population; instead, he was housed in solitary confinement, where he remained for the duration of his 11-month detention at CCJDC. *See id.* ¶¶ 15, 20-22, 186. Despite staffing levels of 16 juvenile detention officers at CCJDC and times when staff often outnumbered juveniles 2:1, Christian was housed in solitary confinement and rarely allowed out of his cell. *Id.* ¶¶ 203-06.

The week after Christian arrived, Sheila Stevenson, a licensed independent social worker ("LISW") with TeamBuilders Counseling Services, assessed Christian and noted he had problems with anxiety and enuresis and had a diagnosis of borderline intellectual functioning. *See id.* ¶¶ 23-24. She also noted that he exhibited symptoms of anxiety and depression, and

---

[3] Defendant Joan Martin, the on-site head of medical services at CCJDC, Proposed Second Am. Compl. ¶ 9, ECF No. 25-1; Defendant Correctional Healthcare Companies, Inc. ("CHC"), which was contractually responsible for providing health care at CCJDC, *id.* ¶¶ 11-12; and Defendant Correct Care Solutions, LLC, the successor in interest to CHC, *id.* ¶ 13, are not parties to the motions at issue.

learned from his mother that Christian had difficulty performing activities of daily living, such as maintaining hygiene without help. *See id.* ¶¶ 23-26.

During his stay in solitary confinement, Christian's mental health deteriorated quickly. *Id.* ¶ 28. Guards frequently noticed Christian was visibly upset, crying, afraid in his cell, and depressed, yet records indicate he received no mental health care in response to these observations. *See id.* ¶¶ 29-32, 35-40, 46, 59-61, 82-90, 107-08, 138-42, 160. On August 7, 2013, Christian was visibly upset and told staff he felt like he was passing out and afraid to fall asleep. *Id.* ¶ 35. Although they moved him to a holding cell, he was not provided medical treatment. *Id.* ¶ 36. The following morning Christian began experiencing severe anxiety with hyperventilation, began crying, and said he needed to go to the hospital, but the jail provided no medical treatment beyond instructing him to relax and slow his breathing. *Id.* ¶¶ 37-39. Following the incident, Christian was placed on "Health and Wellness" Watch, at 30-minute increments, on which he remained for the rest of his approximately nine and a half month stay. *Id.* ¶¶ 41-42. During the first seven days on "Health and Wellness" Watch, records show he remained in his cell for at least 20 hours per day, received only two short showers, and was let out for recreation only twice. *Id.* ¶ 57. Christian began talking to himself underneath his bed, banging on the door and walls of his cell, and yelling. *Id.* ¶¶ 58, 110, 113.

On another occasion, a jail officer reported that he saw a journal entry Christian wrote saying he was tired of being abused and neglected and was tired of living. *Id.* ¶ 48. The next day a nurse who examined Christian noted he was anxious, uncooperative, and angry and again recommended he be housed in general population, yet jail staff continued to house him in a solitary cell. *Id.* ¶¶ 52-55. When Christian received counseling, his counselor noticed how emotionally distressed he was. *Id.* ¶ 75-76, 127-29, 136. He experienced frequent anxiety attacks

throughout his detention and began exhibiting odd behavior, such as flushing food down his toilet, frequently being seen standing on his sink, and picking at his skin, leading to infections. *See id.* ¶¶ 77, 92-97, 106, 109, 176. Although Christian was offered his medications, he intermittently refused to take them, so guards discontinued his prescriptions without the consent or advice of his mother or physician. *Id.* ¶¶ 100-01. In response to his bizarre behavior, guards often punished him with loss of privileges, including not being let out of his cell. *Id.* ¶¶ 175-77.

Christian did not receive schooling until nine days after classes began for other children. *Id.* ¶ 66. Despite having an updated Individualized Education Plan ("IEP") setting forth his needs for special education, occupational therapy, and counseling, Christian consistently received far fewer minutes of education than the 235 minutes of math and 235 of English each week set forth in his IEP. *See id.* ¶¶ 63-72, 124-25, 172-74. For example, during the entire month of September, Christian received only 36 minutes of education. *Id.* ¶ 68. Records show that there was not a single month during his detention when Christian received occupational therapy or mental health counseling each week as his IEP required. *Id.* ¶ 73.

Christian's condition deteriorated to the point that a forensic evaluation was ordered to determine his competency, yet he remained isolated without mental healthcare. *Id.* ¶¶ 117-18. Christian continued to be isolated in his cell for extraordinary lengths of time. *Id.* ¶ 126. Records indicate that between December 20, 2013 and January 5, 2014, Christian was not allowed out for recreation. *See id.* ¶¶ 138-140. On January 23, 2014, Christian made comments to Melodye Thomas that he felt like hurting himself, which she reported to Defendant Sandra Martin. *Id.* ¶¶ 142-44. They placed him on 15-minute suicide watch for 24 hours that day. *Id.* ¶ 144. Over the next several weeks, he continued to be housed in isolation, and if he was moved from his cell, it was to the multi-purpose room in isolation, devoid of social interaction. *Id.* ¶¶ 146-47. He

went days, sometimes weeks without any recreation. *See id.* ¶¶ 148-168. From September 3 and 14, 2013, Christian was allowed out once for 58 minutes of recreation; from November 22 through 29, 2013, and again from December 2 through 11, 2013, he was not allowed out for recreation; from April 14 through 21, 2014, he received only 14 minutes of recreation outside his cell; and during the week of May 4, 2014, he was allowed out to recreation once for 18 minutes. *Id.* ¶¶ 150-154. During the last two months of detention, Christian often went days isolated to his cell for over 20 hours per day. *Id.* ¶ 171. The lack of recreation and prolonged isolation caused his mental health to decline very quickly. *Id.* ¶ 155.

On February 28, 2014, guards noted Christian was crying in his cell, lying underneath the bunk, asking for his mom, and later in the day he flooded his cell and was rubbing the window with a wet blanket. *Id.* ¶¶ 160-62. He began yelling that he was going to kill himself and they placed him on suicide watch, yet he was not provided any mental health intervention following his suicide threats. *Id.* ¶¶ 163-65. Records indicate Christian was not allowed out for recreation from February 23, 2014 until March 11, 2014. *See id.* ¶¶ 167-68.

On May 7, 2014, Christian urinated on himself and refused to shower. *Id.* ¶ 178. Although he eventually agreed to shower when threatened that he must shower or not be let out of his cell, he was only let out for an additional two minutes for the entire day following his shower. *Id.* ¶ 180. On May 12, 2014, guards found Christian hiding under his blanket with blood everywhere. *Id.* ¶ 181. Christian told them he bites his lip when he becomes anxious. *Id.* ¶ 182. The next day, Christian's mother expressed concern that he had plans to kill himself, so they moved him to a holding cell for observation without providing mental health counseling or giving him access to a doctor. *Id.* ¶¶ 183-84. Following this incident, he was not allowed out for recreation for the remainder of his detention until May 27, 2014, when he was released to Copper

Hill in Utah for treatment to attain competency. *Id.* ¶¶ 185-86. From June 21, 2013 through May 27, 2014, Christian spent eleven months in solitary confinement without a hearing or periodic classification review. *Id.* ¶¶ 242, 249.

While at Copper Hills, Christian made many statements of his desire to commit suicide. *Id.* ¶ 188. The Copper Hills treatment providers determined he would not be able to attain competency to stand trial within a year, if ever, so his criminal charges were dropped. *Id.* ¶¶ 192-93. Because of the severity of Christian's condition, he remained at Copper Hills for treatment of his mental illnesses until his discharge on October 19, 2014, and he now suffers from post-traumatic stress disorder. *Id.* ¶¶ 194-96.

Defendants Sandoval and Sandra Martin knew how badly Christian's mental health deteriorated during his time at CCJDC. *Id.* ¶ 207. They also knew CCJDC was not equipped to house and treat inmates in need of expert mental healthcare like Christian, yet they accepted Christian as an inmate and placed him in solitary confinement where they allowed him to remain, untreated, for eleven months. *Id.* ¶¶ 208-12. Defendant Sandra Martin was aware of Christian's need for medical attention, was directly informed that he was expressing suicidal concerns that were new symptoms, yet she continued to allow him to be housed in isolation without adequate mental healthcare. *Id.* ¶¶ 217-20. Defendants failed to provide Christian with constitutionally mandated recreation time each day, resulting in him not leaving his cell or going outside for long periods of time, and they were aware that subjecting a child to these conditions was inhumane. *Id.* ¶¶ 222-23. Defendant Sandoval was made aware in October 2013 that the New Mexico Association of Counties was advising jails not to house the mentally ill in segregation, but to give them access to recreation and social interaction with other inmates, and to evaluate them every other day by mental health. *See id.* ¶¶ 224-28.

## II. PROCEDURAL HISTORY

Plaintiff subsequently filed a complaint on behalf of her son Christian asserting claims for (i) violation of substantive due process based on inhumane conditions of confinement and inadequate medical care against Defendants Sandoval, Sandra Martin, and Joan Martin; (ii) violation of procedural due process against the Board, Tori Sandoval in her official capacity, and Sandra Martin in her official capacity ("Official Capacity Defendants") for arbitrarily placing Christian in solitary confinement without a classification hearing or periodic classification review; (iii) violation of the Rehabilitation Act, 29 U.S.C. § 794, against the Official Capacity Defendants for denying Christian access to a free appropriate education as required by the Individuals with Disabilities Act ("IDEA"); (iv) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* ("ADA"), against the Official Capacity Defendants for failing to accommodate Christian's mental disability and denying him the benefits and services of the jail by reason of his mental disability; (v) a claim against the Official Capacity Defendants for a custom and policy of violating constitutional rights by housing seriously mentally ill juveniles in isolation without providing them needed mental healthcare; and (vi) state law negligence claims. *See* Am. Compl., ECF No. 3. The County Defendants filed a Rule 12(b) Motion to Dismiss and for Qualified Immunity seeking dismissal of all the federal claims against them (ECF No. 15). Plaintiff then moved to amend the complaint, which the County Defendants oppose.

## III. MOTION TO AMEND COMPLAINT

A court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as

undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999)). To survive dismissal, a complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a plaintiff's complaint under Rule 12(b)(6), the court must accept all well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Plaintiff moves to amend the complaint to correct the name of Defendant Sue Martin to Sandra Martin, remove the Rehabilitation Act claim, and make minor corrections to two other counts. Pl.'s Mot. to Am. 1, ECF No. 25. The County Defendants oppose the motion based on futility, arguing that Plaintiff cannot cure the failure to exhaust administrative remedies by dropping the claim seeking educational remedies or removing certain factual assertions from the complaint. The Court will consider the futility arguments when analyzing Defendant's motion to dismiss, using the facts as alleged in the amended complaint. For the reasons discussed *infra*, the Court concludes that amending the complaint would not be futile and will grant leave to amend.

## IV.    MOTION TO DISMISS

### A.  Exhaustion

The Individuals with Disabilities Education Act ("IDEA") imposes obligations on states that receive certain federal funds, among other things, to ensure that all children with disabilities have available to them a free appropriate public education that provides services designed to meet their unique needs. *Carroll v. Lawton Independent Sch. Dist. No. 8*, 805 F.3d 1222, 1226-

27 (10th Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). States must provide educational services to a child with disabilities in accordance with the child's IEP that sets forth educational goals and objectives. *See id.* at 1227. The IDEA

> creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities: If a parent has a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child, the IDEA entitles the parent to an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

*Id.* (internal quotations and citations omitted). Claims filed in federal district court under the ADA, Rehabilitation Act, or other federal laws protecting children with disabilities must also be first administratively exhausted if the plaintiff seeks relief that is also available under the IDEA. *Id.* (quoting 20 U.S.C. § 1415(l)).

To determine if the relief sought is "available" under the IDEA, courts determine whether "the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Id.* The purpose of exhaustion is to give educational agencies an opportunity to remedy the alleged problem before facing suit. *See id.* The County Defendants rely heavily on *Carroll* for their argument that Plaintiff has alleged educational injuries that could be redressed to some degree by the IDEA's administrative process.

In *Carroll*, the plaintiffs alleged that their autistic child suffered injuries when her teacher gave her a "wedgie" and placed her in a dark closet on a number of occasions, resulting in their child becoming agitated upon entering school and negatively affecting her academic progress

and emotional health. *See Carroll*, 805 F.3d at 1225. Her parents sued the teacher, school district, and two other school district employees for a variety of state law claims and brought federal claims against only the school district under the ADA, Rehabilitation Act, and § 1983. *Id.* The Tenth Circuit affirmed the district court's dismissal of all the federal claims for failure to exhaust their administrative remedies under the IDEA because it concluded that plaintiffs alleged "educational injuries that could be redressed to some degree by the IDEA's administrative remedies." *Id.* at 1227. Although the plaintiffs alleged some physical, non-educational injuries, the Tenth Circuit concluded that they also alleged a number of injuries that were educational in nature, for which the IDEA's administrative remedies, targeted at providing prospective educational benefits, were presumptively well suited to remedy. *See id.* at 1228. The Tenth Circuit further explained that the discipline of a child in the classroom is a matter that relates to the provisions of a free appropriate public education and falls within the scope of the IDEA. *Id.* at 1229.

In both the Amended Complaint and the proposed Second Amended Complaint, Plaintiff alleges that Christian was in need of special education, that Christian had an IEP, but that he was denied adequate schooling in violation of his IEP. *See* Am. Compl. ¶¶ 63-73, ECF No. 3; Proposed Second Am. Compl. ¶¶ 63-73, 127-28, 135, ECF No. 25-1. Plaintiff alleges in Count II of the Amended Complaint that the Official Capacity Defendants violated Christian's procedural due process rights by, among other things, punishing him with the removal of privileges, including "loss of access to counseling required by his IEP" without a hearing or other due process. Am. Compl. ¶¶ 247-49, ECF No. 3. In the proposed Second Amended Complaint, Plaintiff eliminated the reference to the removal of privileges that included the loss of counseling as required by the IEP. *See* Proposed Second Am. Compl. ¶¶ 237-49, ECF No. 25-1. Instead,

proposed amended Count II focuses on the theory that Christian was placed in solitary confinement, and remained there, without a hearing or reassessment, subjecting him to unconstitutional punishment through the removal of privileges. *See id.* In Count III of the Amended Complaint, Plaintiff asserted that the Official Capacity Defendants violated the Rehabilitation Act by denying Christian a free appropriate public education, as required by the IDEA, when they placed him in solitary confinement and denied him access to the required education. Am. Compl. ¶¶ 251-271, ECF No. 3. Plaintiff seeks to eliminate the Rehabilitation Act claim entirely in the proposed amended complaint. *See* Proposed Am. Compl., ECF No. 25-1. Plaintiff alleges in the ADA claim of the initial and proposed amended complaints that the Official Capacity Defendants violated Christian's rights by, among other things, denying him access to education. *Compare* Am. Compl. ¶ 282, ECF No. 3, *with* Proposed Second Am. Compl. ¶ 260, ECF No. 25-1. In the proposed amended complaint, however, Plaintiff seeks to add: "Plaintiff is not seeking damages or recovery for any educational injuries as a result of Defendants' discriminatory acts and omissions." Proposed Second Am. Compl. ¶ 264, ECF No. 25-1.

Unlike in *Carroll*, here Plaintiff has sued the jail administrators and medical staff that serve the jail, not the local or state educational agencies. The IDEA sets forth procedures and remedies that must be provided by a state or local educational agency. *See Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1269 (10th Cir. 2007). The purpose of exhaustion under the IDEA is to give an opportunity to the school authorities to resolve conflicts before being subject to suit. *See id.* at 1275-76. Plaintiff's claims against the jail defendants are not subject to IDEA's exhaustion requirements. *See id.* at 1280 ("[W]henever a plaintiff brings a claim that is 'educational in nature' purporting to challenge the provision of educational services

*by a local school district*, the claim is 'presumptively redressable' through the IDEA's administrative procedures…. The benefits of exhaustion fully support this rule, as it allows *educational professionals* to have the first crack at designing a program to meet a disabled student's specific needs.") (emphasis added). Plaintiff's asserted damages in this case are those resulting from Christian's alleged placement in prolonged solitary confinement, and most of the injuries alleged are completely separate from anything educational in nature. For example, Plaintiff seeks damages for pain and suffering, emotional distress, and exacerbation of his mental illness resulting from the denial of recreational and programming offered by the jail. Consequently, even had Plaintiff exhausted the IDEA's administrative remedies, relief from the conditions of solitary confinement are not in control of the educational agencies, but rather, the jail administrators who Plaintiff alleges discriminated against Christian on the basis of his disability. Plaintiff's ADA and due process claims are therefore not subject to the exhaustion requirements of the IDEA. *See id.* at 1280-81 (explaining that IDEA offers no relief in context of pure discrimination claims because they do not relate to provision of FAPE in least restrictive environment).

The County Defendants additionally argue, without on-point authority, that Plaintiff cannot amend a complaint to circumvent the administrative exhaustion requirement. The Court finds Defendants' position unpersuasive in this context and will permit Plaintiff to remove the Rehabilitation Act claim and clarify in the ADA claim that she is not seeking damages for educational injuries suffered by Christian. Plaintiff's initial complaint sued jail administrators, not the state or local school district, and thus the remaining claims were never subject to the IDEA exhaustion requirements.

### B. Failure to State a Due Process Claim [4]

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...." The Due Process Clause protects individuals against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action depriving a person of liberty is implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

### 1. Procedural Due Process (Count II)

To determine generally whether a person's procedural due-process rights were violated, a court looks at whether the person (i) possesses a protected liberty interest and (ii) was afforded an appropriate level of process. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Under the Due Process Clause, a pretrial detainee may be subject to conditions and restrictions of incarceration so long as they do not amount to punishment prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979)). *See also Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981) ("[C]onstitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to 'punishment' in the constitutional sense."). Conditions of pretrial detention that constitute punishment cannot be constitutionally imposed without due process of law. *See Bell*, 441 U.S. at 538. Absent a showing of expressed intent to punish by jail officials, the court must

---

[4] The County Defendants asserted generally in the motion that Plaintiff's ADA claim is barred by his failure to exhaust IDEA remedies *and* failure to state a plausible claim for relief. Defs.' Mot. 2, ECF No. 15. Nowhere in the motion, however, did the County Defendants address the basis for their assertion that Plaintiff failed to state an ADA claim aside from the exhaustion theory. The Court will therefore not address an issue not specifically raised in the motion.

analyze whether the restriction is reasonably related to a legitimate governmental objective. *Id.* at 538-39. If the conditions are not reasonably related to a legitimate governmental purpose, the court permissibly may infer that the purpose is punishment. *Peoples*, 422 F.3d at 1106.

According to the allegations of the Proposed Second Amended Complaint, Christian endured numerous serious conditions that imposed a significant hardship on him by denying him the ordinary services provided to inmates at the jail for a prolonged period of time. He was given limited access to recreation and denied social programming, such as group meetings or group therapy. He was frequently punished with removal of privileges, or lockdown, resulting in lengthy periods of isolation during his 11-month stay. He was consistently denied adequate mental healthcare. These allegations, construed in Plaintiff's favor, show significant restrictions and hardships on a juvenile pretrial detainee. Moreover, the complaint repeatedly alleges that the conditions of confinement amounted to punishment. *See*, *e.g.*, Proposed Second Am. Compl. ¶¶ 245-46, 248, ECF No. 25-1.

The County Defendants, relying on *Peoples*, argue that a jail has a legitimate interest in segregating inmates for non-punitive reasons, including threats to the safety and security of the institution, and that Plaintiff has failed to assert that Christian could safely be placed into general population or to inform the Court of the pending charges against him. The County Defendants thus contend that Plaintiff did not adequately allege that they placed Christian in solitary confinement for punitive purposes or that the conditions were sufficiently harsh to constitute punishment. The County Defendants' reliance on *Peoples*, however, is unavailing.

In *Peoples*, the Tenth Circuit held that placing a pretrial detainee in segregation to safeguard the safety and security of the institution without an initial hearing does not violate the Constitution. *See Peoples*, 422 F.3d at 1106-07. The context of the case is markedly different --

the prison temporarily placed the prisoner in segregation because there were not enough vacant cells and kept him in segregation when it discovered the prisoner's plot to escape from a previous facility and determined he was an escape risk. *Id.* In contrast, there are no allegations in this case that the CCJDC believed Christian to be an escape threat or otherwise pose a safety or security threat to other inmates. Although the jail administrators may have had a security reason for placing Christian in segregation, that reason is not contained within the four corners of the complaint. The County Defendants have not cited to authority requiring that a plaintiff affirmatively allege in the complaint the pending charges against him or allege that he could be safely placed into general population. Nor have the County Defendants moved for summary judgment. At the motion to dismiss stage, the totality of the allegations in Plaintiff's favor indicates that the jail officials had no legitimate governmental objective reasonably related to the restrictive conditions of Christian's confinement. *Cf. Littlefield*, 641 F.2d at 730-32 (holding that conditions imposed on pretrial detainee suffering from mental illness who was placed in solitary cell for 56 days without windows, lights, bed, clothes, toilet, or recreation outside his cell were unreasonably degrading and excessive).

Regarding the process provided Christian, the alleged facts are that the nurse who conducted Christian's initial medical screening recommended he be placed in general population, yet he was placed in solitary confinement where he remained without periodic classification reviews. Plaintiff plausibly alleges that Christian's placement in solitary was arbitrary, served no legitimate governmental purpose, and was done without any process sufficient to survive a motion to dismiss for failure to state a claim. *Cf. Littlefield*, 641 F.2d at 730-31 (affirming judgment that plaintiff's confinement amounted to punishment without meaningful notice and hearing in violation of due process where prisoner was young man suffering from mental illness

who was housed in solitary "strip cell" for 56 days without opportunity to engage in recreation outside his cell); *Blackmon v. Sutton*, 734 F.3d 1237, 1242-43 (10th Cir. 2013) (affirming denial of summary judgment and qualified immunity for due process claim when evidence showed defendants sometimes used restraint chair on juvenile pretrial detainee in punishing way without legitimate penological purpose, even though evidence also showed defendants usually used chair to prevent detainee from inflicting self-harm); *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) ("Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU without explanation or review of their confinement."). *See also Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) ("Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates."), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (concluding it was error to find prior to summary judgment that 75-day disciplinary segregation was not atypical without carefully examining conditions of confinement); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 808-09 (10th Cir. 1999) (concluding that district erred in dismissing plaintiff's due process claim where duration and degree of plaintiff's restrictions as compared with other inmates showed atypical, significant hardship where inmate was confined to small cell for 23 1/2 hours a day and was denied exercise outside his cell for over a year). The Court will therefore not dismiss Plaintiff's procedural due process claim.

### 2. Substantive Due Process

Under the Fourteenth Amendment, the "State does not acquire the power to punish ... until after it has secured a formal adjudication of guilt." *Ingraham v. Wright*, 430 U.S. 651, 671

n. 40 (1977). Although the Due Process Clause covers a pretrial detainee's constitutional claims concerning conditions of confinement, the Eighth Amendment standard provides the framework for the claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. at 535). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[D]eliberate indifference to serious medical needs of prisoners" also violates the Eighth Amendment's proscription of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although prison officials cannot absolutely guarantee the safety of their prisoners, they are responsible for taking reasonable measures to insure inmate safety. *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.1999).

"Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). A plaintiff satisfies the objective component of the test if the harm suffered was sufficiently serious. *Id.* The Tenth Circuit has described the objective component as incarceration under "'conditions posing a substantial risk of serious harm' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). When a claim involves numerous alleged inhumane conditions, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Craig*, 164 F.3d at 495 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

The subjective component requires a showing that the defendant acted with a culpable state of mind. *See Farmer*, 511 U.S. at 836. In *Farmer v. Brennan*, the Supreme Court observed that the required *mens rea* lies "somewhere between the poles of negligence at one end and

purpose or knowledge at the other . . . ." 511 U.S. at 836. The Court then held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A defendant's knowledge of a substantial risk may be proven by circumstantial evidence, including evidence "that the risk was obvious." *Id.* at 842. Mere negligence is not enough to constitute deliberate indifference. *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).

The County Defendants contend that Plaintiff has not alleged sufficiently harsh conditions of confinement to state a substantive due process claim. The allegations of the complaint, however, state a plausible claim for violation of Christian's substantive due process rights based on the totality of restrictions and the duration of the restrictions that created a known substantial risk of harm to Christian's mental well-being. Plaintiff has asserted that Christian had known mental disabilities and that his condition deteriorated quickly when placed in solitary confinement. Plaintiff alleged sufficient facts to indicate that the named defendants in their individual capacities knew of Christian's condition, knew that his mental health was deteriorating to the point of becoming a suicide risk, yet they continued to keep him in isolation without recreation or access to mental health counseling and healthcare.[5] Plaintiff also asserted facts indicating that Defendant Sandoval was aware that mentally ill inmates should not be housed in segregation and should be evaluated frequently, yet she did not act to evaluate Christian and permit him access to social interactions with other inmates, recreation, or mental health treatment. The complaint sufficiently alleges conditions posing a substantial risk of

---

[5] Contrary to the County Defendants' argument, this case, as alleged by Plaintiff, is not about the right to forced medications.

serious harm to Christian's health or safety and that the individual defendants acted with deliberate indifference to his health and safety, disregarding a known risk of harm. Taken all the factual allegations as true, a reasonable jury could find that the named Defendants placed Christian in solitary and deprived him of recreation and mental healthcare to punish him, rather than for a legitimate purpose. *Cf. Fogle v. Pierson*, 435 F.3d 1252, 1259-60 (10th Cir. 2006) (disagreeing with district court that Eighth Amendment claim was frivolous because factfinder might conclude that risk of harm from three years of deprivation of any form of outdoor exercise was obvious and prison officials disregarded risk by keeping inmate in administrative segregation); *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (concluding that inmate who alleged he received only 30 minutes of out-of-cell exercise in three months stated Eighth Amendment claim because allegations showed excessive risk to inmate's well-being), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). Plaintiff has therefore alleged sufficient facts to state a substantive due process claim.

### C. Qualified Immunity

The County Defendants also argue that they are entitled to qualified immunity and dismissal of the substantive due process claim against them in their individual capacities, because the law was not clearly established. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). If officials of reasonable competence could disagree about the lawfulness of the challenged conduct, then the defendant is entitled to

qualified immunity. *Id.* (quoting *Malley*, 475 U.S. at 341). Although a plaintiff can overcome the defense without a favorable case directly on point, existing precedent must have placed the constitutional question "beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015)). "Clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

When asserting a qualified immunity defense on a Rule 12(b)(6) motion, the defendant faces a more challenging standard of review than would apply on summary judgment. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). At the motion to dismiss stage, a court examines the defendant's conduct as alleged in the complaint for objective legal reasonableness. *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

The Tenth Circuit recently stated that there is ambiguity in this circuit about the right to *outdoor* exercise over an 11-month period. *See Apodaca v. Raemisch*, 864 F.3d 1071, 1079 (10th Cir. 2017). As alleged, however, this case is about more than simply denial of adequate exercise, but how the combination of lack of exercise, social interaction, counseling, and mental healthcare, and the prolonged isolation negatively affected Christian's mental health in a known and serious way. Viewing all the allegations in favor of Plaintiff, it would have been clear to a reasonable jail official that depriving Christian, a juvenile with known mental disabilities, of access to mental health care and confining him to a solitary cell for long periods of time for a period of 11 months when there were obvious signs that his mental health was seriously

deteriorating violated his constitutional rights. *Cf. Blackmon*, 734 F.3d at 1245 ("[B]y 1997 it was clearly established law that the deliberate disregard of a patient's psychological needs can violate a detainee's constitutional rights no less than the deliberate disregard of his physical needs."); *Craig*, 164 F.3d at 492-93, 496 (denying summary judgment to defendants on due process claim given factual questions of whether pretrial detainee was confined for six months in small cell with five or six other men, never had bed linens cleaned, was only permitted two showers a week, sink was frequently clogged, cell had poor ventilation, and he was allowed out-of-cell recreation on only two occasions). *See also Allen v. Avance*, 491 F. App'x 1, 2, 5 (10th Cir. July 10, 2012) (unpublished decision) (denying qualified immunity for pretrial detainee's due process claim alleging that jail officials locked him in jail "drunk tank" for approximately twelve days without bedding, mattress, or toiletries in retaliation for decision to file administrative grievance). The individual defendants are therefore not entitled to qualified immunity on the due process claim.

### D. Preclusion

Alternatively, the County Defendants assert that the procedural due process claim precludes the substantive due process claim based on the principle that when a plaintiff has recourse to an explicit textual source of constitutional protection, he cannot bring a more general claim of substantive due process. It is undisputed that the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement. This case is therefore not one in which a separate constitutional amendment applies to the claims, such as the Fourth or Eighth Amendments. The County Defendants have not provided authority that a pretrial detainee cannot bring both a substantive and procedural due process claim in a complaint where, as here, the pretrial detainee's claims are against different defendants, contain different harms, and allege

different facts. "Plaintiff's procedural due process claim is only directed at the warden as the person with the responsibility to provide disciplinary hearings or procedural due process in such a small facility." Pl.'s Resp. 17 n.9, ECF No. 38. In contrast, Plaintiff's substantive due process claim alleges conscience-shocking inhumane conditions of confinement and denial of access to necessary medical care. It is clear that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights … enjoyed by convicted prisoners." *Bell*, 441 U.S. at 545. Given that pretrial detainees' substantive due process rights to medical care and humane treatment mirror the Eighth Amendment rights of prisoners, and prisoners retain rights to process to protect their liberty interests as well as rights that protect them from conscience-shocking conditions regardless of the process afforded, the Court is not convinced that Plaintiff cannot bring separate procedural and substantive due process claims where Plaintiff has alleged plausible claims for each. The Court will therefore not dismiss the substantive due process claim under a preclusion theory. *See Stevenson*, 495 F.3d at 64-69 (reversing dismissal of pretrial detainees' substantive due process and procedural due process claims, while noting that "the substantive and procedural due process evaluations are distinct"); *Romero v. Board of County Commissioners, et al.*, 202 F.Supp.3d 1223, 1263-64 (D.N.M. Aug. 15, 2016) (refusing to dismiss either procedural or substantive due process claim because the "procedural due-process claim asserts a constitutional injury from being subjected to inhumane conditions <u>without process</u>, while the substantive due-process claim addresses the inhumane conditions themselves as well as the lack of medical care"). As for the County Defendants concerns about double recovery, they can be resolved through appropriate jury instructions. The Court will therefore deny the County Defendants' motion to dismiss Plaintiff's substantive due process claim.

### E. *Monell* Claim[6]

Plaintiff sets forth a separate count for *Monell* liability for the violation of Christian's constitutional rights. The County Defendants argue that *Monell* simply extends liability to a municipal entity for a constitutional violation, that this theory of liability should not be pled in a separate count, and thus that the separate count containing the *Monell* claim must be dismissed for failure to state a claim. Notably, the County Defendants do not argue that Plaintiff fails to allege sufficient factual allegations to support a theory of liability against the Official Capacity Defendants under *Monell*. The Court finds no grounds to dismiss Plaintiff's *Monell* claim merely because Plaintiff chose to plead the theory in a separate count rather than as part of each constitutional count. To do so would elevate form over substance. Accordingly, the Court will not dismiss Count IV of the proposed Second Amended Complaint.

**IT IS THEREFORE ORDERED** that

1. Plaintiff Kelly Cook's Motion to Amend the Complaint (**ECF No. 25**) is **GRANTED**.

2. The County Defendants' Rule 12(b) Motion to Dismiss and for Qualified Immunity (**ECF No. 15**) is **DENIED**.

3. Plaintiff must file the proposed Second Amended Complaint **within 10 days** of entry of this Memorandum Opinion and Order.

_____

**UNITED STATES DISTRICT JUDGE**

---

[6] In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court ruled that municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for merely employing a tortfeasor. Municipalities, instead, are subject to Section 1983 liability only when their official policies or customs cause a plaintiff's constitutional injuries. *See id.* at 694.